IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CITY OF SOUTH SIOUX CITY, NEBRASKA,<br><br>Plaintiff,<br><br>vs.<br><br>THE CHARTER OAK FIRE INSURANCE COMPANY and PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>Defendants. | 4:17-CV-3108<br><br>MEMORANDUM AND ORDER |

The defendant, Philadelphia Indemnity Insurance Company, issued a commercial insurance policy to the plaintiff, the City of South Sioux City, Nebraska. Pursuant to that policy, Philadelphia agreed to indemnify the City for losses sustained as the result of environmental contamination. The City submitted a claim under that policy after it discovered that hydrogen sulfide gas had backed up in the City's sewer system. Philadelphia denied that claim. The City has sued Philadelphia for breach of contract, and Philadelphia has moved to dismiss that claim. For the reasons explained below, that motion will be denied.

## BACKGROUND

In October 2016, the City began sending its sewage to Big Ox Energy, LLC, a waste disposal provider located in South Sioux City, Nebraska. Filing 1 at 2. Big Ox would remove methane gas from the City's sewage and discharge the treated waste back into the City's sanitary system (*i.e.*, sewage system). Filing 1 at 2. But soon after the sewage returned to the City,

residents began reporting an intense and unpleasant odor emanating from their plumbing. Filing 1 at 2. At some point, the residents discovered that the odor was the result of hydrogen sulfide gas that had backed up in the City's sewage system. Filing 1 at 3. Those residents filed tort claims against the City for property damage and bodily harm caused by the odor. Filing 1 at 3.

According to the City, the backup of hydrogen gas was a result of contaminated sewage that had been discharged from Big Ox's facility. *See* filing 1 at 3. So, the City filed a claim with Philadelphia seeking indemnification under its environmental liability policy. *See* filing 1 at 3, filing 1-2 at 10. Pursuant to the policy, Philadelphia agreed to indemnify the City for losses "arising out of contamination on, under or migrating from [the] insured location"—which the policy specifically defined as 1615 1st Ave, South Sioux City, Nebraska (*i.e.* the address of City Hall). Filing 1-2 at 14 (emphasis omitted). The policy also contained a "non-owned location" endorsement which provided additional coverage for damages "arising out of contamination on, under or migrating from a non-owned location." Filing 1-2 at 28 (emphasis omitted). Philadelphia denied the City's claim, and the City has sued Philadelphia for its denial of coverage.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of

the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly,* 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

DISCUSSION

The parties' dispute turns on the legal significance of the "non-owned location" endorsement.[1] As briefly noted above, the underlying insurance policy contains a "non-owned location" endorsement requiring Philadelphia to indemnify the City for any losses it becomes legally obligated to pay "arising out of contamination on, under or migrating from a non-owned location." Filing 1-2 at 28. Philadelphia acknowledges that the City purchased a "non-owned location endorsement" and does not dispute its enforceability. Rather, the parties' disagreement turns on whether the endorsement covers contamination in this particular instance.

Philadelphia raises two arguments as to why, in its view, the City's claim must be dismissed. First, Philadelphia claims that "the non-owned location" endorsement only provides coverage for materials generated at the City's insured location. Filing 12 at 13. And because the City's complaint fails to allege facts tracing the contamination to waste generated at the "insured location" (*i.e.*, City Hall), Philadelphia urges dismissal. Second, Philadelphia claims that even if the "non-owned location" definition includes waste not linked to its "insured location," the City's complaint still fails to state a claim

---

[1] The Court acknowledges that that Philadelphia makes several arguments as to why, in its view, the City's sewer system is not covered by the environmental liability policy. *See* filing 12 at 7-8. Specifically, Philadelphia claims that the policy only indemnifies for damages resulting from contamination on, or under, the City's lone "insured location"—the address of City Hall. And because the residents' homes were not located near City Hall, Philadelphia claims there is no coverage. *See* filing 12 at 3. But the City does not appear to dispute the relatively narrow language, and applicability, of the "insured location" coverage. Filing 14 at 5. In other words, the City does not seek indemnification under the language of the policy itself, rather, the City claims that coverage arises by virtue of the "non-owned location" endorsement. Filing 14 at 6-10.

4

for relief. To that end, Philadelphia contends that the contamination arose out of, and migrated from, the City's sewage system. And because the City's sewage system is owned and operated by the City, Philadelphia says, there is no coverage under the "non-owned location" endorsement. Filing 12 at 11.

Philadelphia's former contention is easily disposed of, so the Court will begin there. In support of its argument that the "non-owned location" endorsement only provides coverage for materials generated at the City's insured location, Philadelphia points to the definition of "non-owned location." The endorsement specifically defines a "non-owned location" as "a facility used for the recycling, treatment, storage or disposal of the insured's waste or materials generated at [the] insured location, but only if at the time the facility accepts the insured's waste" the facility was not owned or operated by the City, was properly permitted, was not subject to environmental regulatory enforcement, and was not insolvent or bankrupt. Filing 1-2 at 28.

Philadelphia reads that provision as only indemnifying the City for contamination when the material at issue is generated at the City's insured location. Filing 1-2 at 10. That is, Philadelphia interprets the latter phrase, "materials generated at your insured location," as necessarily modifying the entire provision. Filing 12 at 13. Stated another way, Philadelphia construes the disjunctive term "or" between the phrases "of the insured's waste" and "materials generated at the insured location" as, in effect, meaning "only if." *See* filing 12 at 13. So, according to Philadelphia, a waste disposal facility qualifies as a "non-owned location" when it treats, stores, or recycles, the insured's waste *only if* those materials are generated at the "insured location." *See* filing 12 at 13.

5

But that interpretation defies general principles of contract interpretation under Nebraska law. *Winfield v. CIGNA Companies*, 532 N.W.2d 284, 286 (Neb. 1995) (an insurance policy is a contract, and therefore typical rules of contractual construction apply). As the City correctly points out, the disjunctive term "or" is generally read to mean in the alternative, or as having a separate meaning. *See Liddell-Toney v. Nebraska Dept. of Health and Human Services*, 797 N.W.2d 28, 32 (Neb. 2011); *see also Zach v. Eacker*, 716 N.W.2d 437, 441 (Neb. 2006). And when the term "or" is selected by the contracting parties, the Court is to apply the two phrases independently. *See Wolfe v. Abramson*, No. A-97-1210, 1999 WL 703291, at *6 (Neb. Ct. App. Sept. 7, 1999) (citing *Mook v. City of Lincoln*, 21 N.W.2d 743, 744 (Neb. 1946)); *see also United States v. Wilson*, 41 F.3d 399, 401 (8th Cir. 1994).

Moreover, a court should avoid interpreting contract provisions in a manner that leads to unreasonable or absurd results that are obviously inconsistent with the parties' intent. *Timberlake v. Douglas Cty.*, 865 N.W.2d 788, 795 (Neb. 2015). And if a particular contract interpretation renders a material provision meaningless, that construction is inconsistent with the parties' intent. *Id.* And here, according to Philadelphia, the only materials insured by the agreement are materials that are (1) generated at City Hall, and (2) generated at a location not "owned, managed, operated or leased" by the City. Filing 1-2 at 28. The Court finds it hard to imagine circumstances in which City Hall would not be owned, managed, operated, or leased by the City—meaning that Philadelphia's proposed construction of the contract would read the "non-owned location" endorsement entirely out.[2]

---

[2] The Court acknowledges that the odd choice of City Hall as the "insured location" for environmental contamination coverage creates a number of peculiarities in the contract. But Philadelphia's proposed construction of the contract is wholly incongruous.

6

So, applying those generally held principles to the provision at issue here, a facility would qualify as a "non-owned location" under two scenarios. The first is when the facility is used for the recycling, treatment, storage, or disposal of the City's waste. *See* filing 1-2 at 28. And the second is when the facility is used for the recycling, treatment, storage, or disposal of material generated at the City's insured location, so long as the facility also accepts the insureds' waste. *See* filing 1-2 at 28. In other words, to state a plausible breach of contract claim, the City must allege that the contamination at issue migrated from a non-owned facility that *either* treated the City's waste *or* treated material generated at the City's insured location. *See Henriksen v. Gleason*, 643 N.W.2d 652, 658 (Neb. 2002).

And the City's complaint does exactly that. Indeed, the City alleges that after Big Ox treated the City's sewage, it discharged contaminated waste back into the City's sanitary system. *See* filing 1 at 3. That contamination then, allegedly migrated through the City's sewage pipes and into the residents' homes, where the ultimate injury occurred. *See* filing 1 at 3. So, because the City has sufficiently plead that the sewage originated from a non-owned location, the Court will deny the defendant's motion to dismiss on those grounds.

That brings the Court to Philadelphia's remaining argument, that the contamination did not "migrate" from Bix Ox. But that argument is, at least at this early stage of the litigation, equally unavailing. Indeed, despite Philadelphia's attempt to construe its argument as turning on the plain and ordinary meaning of the word "migrate," Philadelphia's contention, stripped to its core, is premised entirely on a factual determination about *where* the contamination "migrated" from. *See* filing 12 at 9-12. That is, did the contamination originate in a City owned location (*i.e.,* its sanitary system)

7

and move to the residents' homes excluding coverage, as Philadelphia argues? *See* filing 12 at 11-12. Or did the alleged contamination move from a non-owned location (*i.e.*, Big Ox) to the residents' homes, triggering coverage under the endorsement, as the City contends? *See* filing 1 at 3; *see also* filing 14 at 9. Either way, answering that question necessarily requires evidence of where and when the contamination first occurred. And that is a factual dispute that the Court cannot, and will not, decide on a motion to dismiss. *See ABC Plastics, Inc.*, 323 F.3d at 697 n.4. So, because the applicability of the "non-owned location" endorsement not only requires the Court to look to the language of the provision, but to the evidence adduced, Philadelphia's motion will be denied.

IT IS ORDERED:

1. The defendant's motion to dismiss (filing 11) is denied.

2. This case is referred to the Magistrate Judge for case progression.

Dated this 27th day of March, 2018.

BY THE COURT:

John M. Gerrard
United States District Judge