IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CITY OF SOUTH SIOUX CITY, NEBRASKA,<br><br>    Plaintiff,<br><br>vs.<br><br>THE CHARTER OAK FIRE INSURANCE COMPANY and PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>    Defendants. | 4:17-CV-3108<br><br><br><br><br><br>MEMORANDUM AND ORDER |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY,<br><br>    Third-Party Plaintiff,<br><br>vs.<br><br>ARTHUR J. GALLAGHER RISK MANAGEMENT SERVICES, INC.,<br><br>    Third-Party Defendant. | |

  This matter is before the Court on Arthur J. Gallagher's motion to dismiss (filing 54) Philadelphia Indemnity Insurance Co.'s third-party complaint. For the reasons set forth below, that motion will be granted.

## I. BACKGROUND

  As explained in the Court's prior Memorandum and Order (filing 16), this suit involves a commercial insurance policy issued to the plaintiff, the City

of South Sioux City, Nebraska by the primary defendant, Philadelphia. *See* filing 1 at 3, filing 1-2 at 10. Under that policy, Philadelphia agreed to indemnify the City for losses sustained as the result of environmental contamination. *See* filing 1 at 3, filing 1-2 at 10.

In October 2016, the City began sending its sewage to Big Ox Energy, LLC, a waste disposal provider located in South Sioux City, Nebraska. Filing 1 at 2. Big Ox would remove methane gas from the City's sewage and discharge the treated waste back into the City's sanitary system (*i.e.*, sewage system). Filing 1 at 2. But soon after the sewage returned to the City, residents began reporting an intense and unpleasant odor emanating from their plumbing. Filing 1 at 2. At some point, the residents discovered that the odor was the result of hydrogen sulfide gas that had backed up in the City's sewage system. Filing 1 at 3. Those residents filed tort claims against the City for property damage and bodily harm caused by the odor. Filing 1 at 3.

According to the City, the backup of hydrogen gas was a result of contaminated sewage that had been discharged from Big Ox's facility. See filing 1 at 3. So, the City filed a claim with Philadelphia seeking indemnification under its environmental liability policy. See filing 1 at 3, filing 1-2 at 10. Pursuant to that policy, Philadelphia agreed to indemnify the City for losses "arising out of contamination on, under or migrating from [the] insured location"—which the policy specifically defined as 1615 1st Ave, South Sioux City, Nebraska (*i.e.* the address of City Hall). Filing 1-2 at 14 (emphasis omitted). The policy also contained a "non-owned location" endorsement which provided additional coverage for damages "arising out of contamination on, under or migrating from a non-owned location." Filing 1-2 at 28 (emphasis omitted). Philadelphia denied the City's claim, and the City filed this lawsuit against Philadelphia. Filing 1 at 3.

After this lawsuit was initiated, Philadelphia filed a third-party complaint against Arthur J. Gallagher Risk Management Services—an insurance broker that, in this case, had obtained the environmental liability policy from Philadelphia on behalf of the City. *See* filing 52 at 2-3. Specifically, Philadelphia sued Arthur Gallagher for a variety of state law claims including: (1) negligence, (2) misrepresentation or concealment, (3) indemnification (common law), (4) contribution, (5) indemnification (contractual), and (6) breach of contract. Filing 52 at 5-8. Arthur Gallagher now moves to dismiss each of those claims, or alternatively, to sever those claims from the initial litigation between the City and Philadelphia. Filing 54.

## II. STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id.*

And to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal,* 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Where the well-pleaded facts do not permit the court

to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id.* at 679.

Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id.* The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id.* at 556.

When deciding a motion to dismiss under Rule 12(b)(6), the Court is normally limited to considering the facts alleged in the complaint. If the Court considers matters outside the pleadings, the motion to dismiss must be converted to one for summary judgment. Fed. R. Civ. P. 12(d). However, the Court may consider exhibits attached to the complaint and materials that are necessarily embraced by the pleadings without converting the motion. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### III. DISCUSSION

Arthur Gallagher moves to dismiss Philadelphia's third-party complaint in its entirety. Filing 54 at 1-2. As noted above, that complaint includes six state law causes of action. Those claims, however, which generally fit into one of two categories: (1) tort allegations or (2) contract claims. The Court will consider Philadelphia's contractual allegations—which tend to provide general context for the parties' dispute—before moving on to Philadelphia's tort allegations.

## 1. BREACH OF CONTRACT

At the center of the Philadelphia's third-party complaint is the an agreement between Philadelphia and Arthur Gallagher called the "Preferred Producer Agreement." *See* filing 58 at 8. Under that agreement, Philadelphia claims that Arthur Gallagher must indemnify Philadelphia for Arthur Gallagher's errors and omissions. *See* filing 58 at 8. And according to Philadelphia, Arthur Gallagher's "blatant failure to disclose material facts concerning the insurance application," amounted to an error or omission under the Preferred Producer Agreement and thus, Arthur Gallagher breached the terms of that agreement. *See* filing 58 at 8.

To state a breach of contract claim, the plaintiff must plead the existence of a promise, its breach, and damage. *Henriksen v. Gleason*, 643 N.W.2d 652 (Neb. 2002). There is, however, little, if any, information contained in Philadelphia's third-party complaint explaining what promises were actually made in the Preferred Producer Agreement. In fact, the only provision of the agreement mentioned by Philadelphia is the following:

> Each Party shall defend, indemnify and hold harmless [Philadelphia] . . . from and against all liabilities, damages, penalties, costs and expenses (including reasonable attorney's fees) arising from or related to any third-party allegations, suits, claims (actual or threatened), actions or proceedings (each a "Claim") together with all damages, liabilities and costs (including attorney's fees and expenses) arising from: (i) any error or omission by [Arthur Gallagher] or [Arthur Gallagher's] employees, agents or other representatives in connection with the performance of its obligations and duties arising under this Agreement; . . . a breach

by [Arthur Gallagher] of any of its obligations set forth in this Agreement[.]

Filing 52 at 5.

But even this provision references errors or omissions made "in connection with its obligations and duties arising under [the Preferred Producer Agreement]." Filing 52 at 5. Nothing in Philadelphia's third-party complaint, however, explains what these obligations and duties might be. *See* filing 52 at 5. And without a cursory understanding of what Arthur Gallagher was obligated to do or provide under the Preferred Producer Agreement, the Court concludes that Philadelphia has failed to plead sufficient facts to state a breach of contract claim.[1] *See Kotrous v. Zerbe*, 846 N.W.2d 122, 126 (Neb. 2014); *See* filing 52 at 2-5.

Philadelphia's covenant of good faith and fair dealing claim does not fare any better. To state a claim for a violation of the covenant of good faith and fair dealing, the plaintiff must plead facts that support an inference that the defendant has violated, nullified, or significantly impaired any benefit of the contract. *Spanish Oaks, Inc. v. Hy-Vee, Inc.*, 655 N.W.2d 390, 401 (Neb. 2003). But as noted above, the third-party complaint is completely devoid of any, much less sufficient, facts demonstrating how, if at all, Arthur Gallagher significantly impaired or violated a benefit of the contract. *Spanish Oaks, Inc.*,

---

[1] More fundamentally, Philadelphia has also failed to plead the existence of any damage arising out of Arthur Gallagher's alleged breach of contract. Filing 52 at 5. After all, Philadelphia has not actually paid the City under the environmental liability policy. So, to the extent that the contract requires indemnification, Arthur Gallagher can't have breached it yet.

145, 655 N.W.2d at 401; filing 52 at 8-9. Accordingly, the Court will grant Arthur Gallagher's motion to dismiss on those grounds.[2]

## 2. TORT CLAIMS

The third-party complaint's lack of sufficient factual allegations concerning the general context and purpose of the Preferred Producer Agreement doesn't just support the dismissal of Philadelphia's contract claims. That oversight also makes it difficult for the Court to evaluate Philadelphia's tort claims. As will be discussed in more detail below, without any factual allegations demonstrating what the Preferred Producer Agreement actually entails, it is difficult for the Court to understand the relationship between Philadelphia and Arthur Gallagher, or any tort duties that might arise from that relationship. So, for the reasons explained below, the Court concludes that Philadelphia's various tort allegations also fail as a matter of law.

### (a) Negligence

To begin with, Philadelphia claims that Arthur Gallagher was negligent because it failed to inform Philadelphia of material facts involving the City's application for its environmental liability policy. Filing 52 at 5-6. That argument, however, requires Arthur Gallagher to owe Philadelphia a duty to use reasonable care. Olson v. Wrenshall, 822 N.W.2d 336, 341 (Neb. 2012).

---

[2] Philadelphia's third-party complaint also includes a separate "Indemnification (Contractual)" claim—styled as Count V. Filing 52 at 7. Indemnity may occur when a party expressly contracts for it. Kuhn v. Wells Fargo Bank of Nebraska, N.A., 771 N.W.2d 103, 119 (Neb. 2009). But the appropriate cause of action then, is a breach of contract claim. *Id.* So, for the reasons set forth above, Philadelphia's Indemnification (Contractual) claim will be dismissed.

7

Under Nebraska law, to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of that duty, causation, and damages. *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 784 N.W. 2d 907, 913 (Neb. 2010) (citation omitted). But if there is no duty owed, there can be no claim of negligence. *Olson*, 822 N.W.2d at 341.

Generally speaking, an insurance broker owes a duty of reasonable care to its principal. *Countryside Co-op. v. Harry A. Koch Co*, 790 N.W.2d 873, 882 (Neb. 2010); *Kenyon v. Larsen*, 286 N.W.2d 759, 764 (Neb. 1980). In this case, that would mean that Arthur Gallagher (*i.e.*, insurance broker) owes the City (*i.e.*, the principal) certain duties and that Arthur Gallagher could be liable to the City for failing to perform those duties. *McReynolds v. RIU Resorts and Hotels, S.A.*, 880 N.W.2d 43, 47 (Neb. 2016). An insurance company also owes a general duty to the policyholder. *Dahlke v. John F. Zimmer Ins. Agency, Inc.*, 515 N.W.2d 767, 771 (Neb. 1994). Here, that would mean that Philadelphia (*i.e.*, the issuing insurance company) would owe the City (*i.e.*, the policyholder) certain duties, and that Philadelphia might be liable to the City for failing to adhere to those general duties. *See id.*

But nothing in Philadelphia's third-party complaint would support an inference that Arthur Gallagher owed Philadelphia a duty of care. Instead, that complaint broadly opines that Arthur Gallagher "had a duty to exercise reasonable care and inform and disclose to Philadelphia material facts regarding [the City's] application and policy for insurance. " Filing 52 at 5. And the complaint asserts that Arthur Gallagher necessarily owed Philadelphia a duty to use reasonable care because "Arthur [] Gallagher was in the unique position to convey information to Philadelphia." Filing 58 at 4.

But the third-party complaint fails to allege why that is so—particularly considering that Philadelphia seems to be suggesting that Arthur Gallagher

8

had a legal duty to Philadelphia to be act against the interests of its principal, the City.³ *See, e.g., RM Campbell Indus., Inc. v. Midwest Renewable Energy, LLC*, 886 N.W.2d 240, 251 (Neb. 2016); *Smason v. Celtic Life Ins. Co.*, 615 So. 2d 1079, 1085 (La. Ct. App.), *writ denied*, 618 So. 2d 416 (La. 1993) (finding the complaint devoid of any facts from which one could infer that the insurance broker owed the insurer a duty to disclose). And even liberally construed, Philadelphia's duty allegations are too vague and conclusory to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, the Court will grant Arthur Gallagher's motion to dismiss on its negligence claim.

(b) Fraudulent Misrepresentation or Concealment

Relatedly, Philadelphia contends that Arthur Gallagher concealed or mispresented relevant information relating to the City's environmental liability policy.⁴ Filing 52 at 6. With respect to Philadelphia's fraudulent concealment claim, Philadelphia alleges that Arthur Gallagher failed to disclose the City's agreement with Big Ox to send the City's sewage. Filing 52 at 6. And that was important, Philadelphia claims, because had it known the City would be sending its sewage to Big Ox, Philadelphia would not have issued the environmental liability policy. *See* filing 52 at 6; filing 58 at 5-6.

---

³ To be clear, Philadelphia does not contend that Arthur Gallagher owed Philadelphia a duty of care because Arthur Gallagher's principal—the City—owed Philadelphia a duty of care.

⁴ Philadelphia's second cause of action is styled as a "misrepresentation and/or concealment" claim. Filing 52 at 6. But the only factual allegations supporting that cause of action are related to Arthur Gallagher's alleged concealment—not any affirmative misrepresentations it made. *deNourie & Yost Homes, LLC v. Frost*, 854 N.W.2d 298, 311 (Neb. 2014). So, the Court will analyze this claim as a fraudulent concealment claim.

9

To state a claim for fraudulent concealment, Philadelphia must plead the following: (1) the defendant had a duty to disclose a material fact; (2) the defendant, with knowledge of the material fact, concealed the fact; (3) the material fact was not within the plaintiff's reasonably diligent attention, observation, and judgment; (4) the defendant concealed the fact with the intention that the plaintiff act or refrain from acting in response to the concealment or suppression; (5) the plaintiff, reasonably relying on the fact or facts as the plaintiff believed them to be as the result of the concealment, acted or withheld action; and (6) the plaintiff was damaged by the plaintiff's action or inaction in response to the concealment. *Knights of Columbus Council 3152 v. KFS Bd, Inc.*, 791 N.W.2d 317, 334 (Neb. 2010).

Here, however, Philadelphia has not sufficiently pled a fraudulent concealment claim. A party might be liable for fraudulent concealment if—but *only if*—that party is *also* under a duty to the other to exercise reasonable care to disclose the matter in question. *Zawaideh v. Nebraska Dep't of Health & Human Servs. Regulation & Licensure*, 792 N.W.2d 484, 496 (Neb. 2011), *disapproved on other grounds by State v. Boche*, 885 N.W.2d 523 (Neb. 2016). And as discussed in the previous section, Philadelphia has not pled sufficient facts suggesting that Arthur Gallagher owed Philadelphia a general duty to use reasonable care. Similarly, Philadelphia failed to sufficiently plead that Arthur Gallagher owed Philadelphia a specific duty to disclose.

The Nebraska Supreme Court has recognized some situations where there might be a duty to disclose—upon three of which Philadelphia relies in particular:

(1) matters known to the defendant that the plaintiff was entitled to know because of a fiduciary or other similar relation of trust or confidence between them;

(2) matters known to the defendant that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading; and

(3) facts basic to the transaction, if the defendant knows that the plaintiff is about to enter into it under a mistake as to them, and that the other, because of the relationship between them, the customs of the trade, or other objective circumstances, would reasonably expect a disclosure of those facts.

Filing 58 at 6; *see also* Zawaideh, 792 N.W.2d at 496 (citing Restatement (Second) of Torts § 551).

First, Philadelphia argues that Arthur Gallagher owed Philadelphia a fiduciary duty. A fiduciary duty arises out of a confidential relationship which exists when one party gains the confidence of the other and purports to act or advise with the other's interest in mind. *Gonzalez v. Union Pac. R.R. Co.*, 803 N.W.2d 424 (Neb. 2011). In other words, whenever confidence is reposed on one side, and domination and influence result on the other—a fiduciary duty exists. *DeSciose v. Chiles, Heider & Co.*, 476 N.W.2d 200, 207-8 (Neb. 1991);

But there is nothing in Philadelphia's third-party complaint to suggest a confidential relationship existed between Philadelphia and Arthur Gallagher. In fact, even if the Court were to assume, for sake of argument, that there was some sort of broker-client relationship between Philadelphia and Arthur

Gallagher, the Nebraska Supreme Court has found that the mere existence of a broker-client relationship, without more, does not imply a confidential relationship.[5] *DeSciose*, 476 N.W.2d at 207-08; *see also Ponec v. Guy Strevey & Assocs., Inc.*, No. A-15-775, 2017 WL 495591, at *6 (Neb. Ct. App. Feb. 7, 2017), *review denied (*Mar. 23, 2017)

Indeed, in *DeScoise*, the Nebraska Supreme Court determined that the lower court did not err in refusing to instruct the jury on the plaintiff's theory that a fiduciary relationship existed. 476 N.W.2d at 207. In reaching that conclusion, the Nebraska Supreme Court noted that the record did not set forth any, much less sufficient, facts that might suggest a fiduciary relationship existed. *Id.* That is true, the Court found, because the plaintiff was an able, experienced businessman, who used independent judgment with respect to investments. *Id.* And nothing in the record demonstrated how, if at all, the defendant exercised domination or influence over the plaintiff. *Id.*

The same is true here: Philadelphia is an experienced insurance provider. Filing 52 at 10. And Philadelphia's third-party complaint does not contain sufficient factual allegations to support an inference that Philadelphia was dominated or influenced by Arthur Gallagher, or that Arthur Gallagher should have been acting with Philadelphia's interests in mind.[6] *DeSciose,* 476 N.W.2d at 207-8. Thus, the Court concludes that Philadelphia has failed to plead the existence of a fiduciary duty.

Second, there are no facts in Philadelphia's third-party complaint to support Philadelphia's contention that Arthur Gallagher knew its omission

---

[5] To be clear, the only broker-client relationship that the third-party complaint actually alleges is between Arthur Gallagher and the City. Filing 52 at 3.

[6] In fact, Arthur Gallagher's duties were to the City—not Philadelphia. *See* filing 61 at 4.

was necessarily misleading. *See* filing 52 at 10; *see also Zawaideh*, 792 N.W.2d at 496. Nor has Philadelphia alleged any customs of the insurance industry or objective facts of the transaction to support a conclusion, under these circumstances, that Philadelphia would reasonably expect Arthur Gallagher to disclose the existence of the Big Ox contract, or the reason the City sought coverage. Filing 52 at 10; *Zawaideh*, 792 N.W.2d at 496. Accordingly, Philadelphia has failed to allege facts supporting its contention that Arthur Gallagher owed Philadelphia a duty to disclose information relating to the City's Big Ox contract.

More fundamentally though, even if Arthur Gallagher did owe Philadelphia a duty to disclose certain information, Philadelphia's negligent concealment claim still fails. As noted above, to succeed on a fraudulent concealment claim, not only must Arthur Gallagher owe Philadelphia a duty to disclose, but Philadelphia must also plead facts supporting an inference that Arthur Gallagher's intention in concealing that information was to induce Philadelphia to act or refrain from acting in response to its suppression. *Knights of Columbus Council 3152*, 791 N.W.2d at 334.

But the only allegations contained in Philadelphia's complaint on that point are that Philadelphia informed Arthur Gallagher if the City wanted its environmental policy to included the City's sewer system, Arthur Gallagher needed to provide Philadelphia with additional sewer system schematics. Filing 52 at 4. Instead of submitting that additional information, Arthur Gallagher asked for a quote for environmental liability *without* coverage for the sewer system. Filing 52 at 4. That quote was relayed to the City and eventually, the City obtained the requisite coverage from Philadelphia. Filing 52 at 3. And based on those facts, it is difficult to see how the omission of information relating to how the City's sewage is treated for purposes of

13

obtaining an insurance policy—a policy that, at least according to Philadelphia, does not even cover the City's sewer system—amounts to intentional concealment.[7] *See* filing 1 at 4-6; *see also* filing 55 at 8.

To the contrary, Philadelphia's allegations tend to demonstrate that Philadelphia was actually aware it had not received certain information surrounding the City's sewer system, and chose to issue the coverage nonetheless. *See* filing 52 at 3. Thus, Philadelphia's complaint has failed to sufficiently allege that Arthur Gallagher's intention in concealing the Big Ox contract was to induce Philadelphia into issuing an insurance policy it would not have otherwise issued. *Knights of Columbus Council 3152*, 791 N.W.2d at 334. So, the Court will grant Arthur Gallagher's motion to dismiss Philadelphia's fraudulent concealment or misrepresentation claim.

(c) Common Law Indemnification and Contribution

Lastly, Philadelphia alleges that Arthur Gallagher is obligated to pay any amount Philadelphia must pay the City under the insurance policy. Filing 52 at 6-7. Contribution involves the sharing of loss between parties who are jointly liable. *Warner*, 483 N.W.2d at 771. An obligation to indemnify, however, may grow out a liability imposed by law or a contractual relation. *Kuhn*, 771 N.W.2d at 119. Indemnity may occur when an active or primary tortfeasor is held liable for injuries proximately caused by the passive negligence of a joint tortfeasor. *Id.* But indemnity may also occur when a party expressly contracts for it. *Id.*

Both Philadelphia's indemnity and contribution claims, however, fail as a matter of law. With respect to Philadelphia's indemnity allegations, if that

---

[7] The present motion does not ask the Court to determine what the City's environmental policy actually covers, and this Memorandum and Order does not address it.

14

claim is rooted in contract—that claim is dismissed for the reasons discussed above. And to the extent that Philadelphia's indemnity claim is based on tort principles, there is nothing in Philadelphia's third-party complaint to suggest that, in this case, an active or primary tortfeasor (*i.e.*, Arthur Gallagher) should be held liable for injuries proximately caused by the passive negligence of a joint tortfeasor (*i.e.*, Philadelphia). *Id.* Nor are there any factual allegations to suggest that there should be some sort of loss sharing between the parties warranting contribution. *Warner,* 483 N.W.2d at 771. So, the Court will grant Arthur Gallagher's common law indemnification and contribution claims on those grounds.

## IV. CONCLUSION

For the reasons set forth above, Arthur Gallagher's motion to dismiss is granted, its motion to sever is moot, and Philadelphia's third-party complaint is dismissed.

IT IS ORDERED:

1. Arthur Gallagher's motion to dismiss (filing 54) is granted.

2. Philadelphia's amended third-party complaint (filing 52) is dismissed.

Dated this 24th day of April, 2019.

BY THE COURT:

John M. Gerrard
Chief United States District Judge